UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 25-cr-215 (ECT/DLM)

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHAEL BENJAMIN THOMPSON,

Defendants.

**THE GOVERNMENT'S RESPONSE TO DEFENDANT'S PRETRIAL MOTION TO SUPPRESS STATEMENTS**

The United States of America, by and through its attorneys, Joseph H. Thompson, Acting United States Attorney for the District of Minnesota, Ruth S. Shnider, Assistant United States Attorney, hereby submits its pre-hearing response in opposition to Defendant Michael Thompson's motion to suppress all statements he made at the scene of the search warrant of his residence. For the following reasons, as well as those to be developed at the motions hearing, the motion should be denied in full.

## BACKGROUND

On April 24, 2025, FBI agents executed a federal warrant to search Mr. Thompson's residence in Minneapolis. After multiple phone conversations with Mr. Thompson, agents persuaded him to exit the residence, and he was detained in handcuffs for a handful of minutes while the residence was secured. Then, the handcuffs were removed, and Mr. Thompson had a

voluntary conversation with two agents while seated in the front passenger seat of one of their vehicles. Before and during that interview, he was told multiple times that he was not under arrest and was free to leave. (And, in fact, Mr. Thompson was not arrested at any point that day). The conversation was cordial in tone; indeed, Mr. Thompson remarked multiple times that he could hardly believe how nice the agents were. Mr. Thompson made a number of incriminating admissions during the conversation. The subject of an attorney was mentioned two times. Mr. Thompson asked the agent "how important would a lawyer be in my case?" The agent responded: "Lawyers are important all the time. But I can't advise on whether you should get a lawyer or not." Later, Mr. Thompson remarked that "an attorney's probably not gonna be cheap," and the agent responded: "I really don't know a lot about that, but . . . it might be something you could look into, but it's obviously completely up to you."

## ARGUMENT

Mr. Thompson now moves to suppress all the statements he made on April 24, arguing he should have been advised of his *Miranda* rights and that he invoked his right to counsel. Thompson breaks his challenge into two components: (1) statements made while he was briefly detained in handcuffs outside his residence, and (2) statements he made during the conversation inside the agent's vehicle. As to category #1, Mr. Thompson did not make any

statements of consequence during his brief detention in handcuffs, and thus the Government has no intention of using those statements at trial. This aspect of the motion may be denied as moot.

As to category #2, as the evidence will show, Mr. Thompson was not in custody and thus no *Miranda* warnings were required. Law enforcement is only required to provide a *Miranda* advisory prior to interrogation when a person has been "taken into custody or otherwise deprived of [his] freedom of action in any significant way." *Stansbury v. California*, 511 U.S. 318, 322 (1994). The Eighth Circuit has identified six non-exclusive factors (the so-called "*Griffin* factors") for analyzing whether a defendant is "in custody" for *Miranda* purposes:

> (1) whether the suspect was informed that he or she was free to leave and that answering was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong-arm tactics or strategies were employed; (5) whether the atmosphere was police-dominated; or, (6) whether the suspect was placed under arrest at the end of questioning.

*United States v. Elzahabi*, 557 F.3d 879, 883–84 (8th Cir. 2009) (citing *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)). "The analysis depends upon a review of the totality of circumstances, and '[t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview.'" *Id.* at 630-31 (quoting *United States v. Aldridge*, 664 F.3d 705, 711 (8th Cir. 2011)). Here, as the evidence will show, all of the factors weigh

squarely in favor of a finding that Thompson was not in custody. Indeed, it "weighs heavily in favor of noncustody when officers clearly inform a suspect that [he] is free to leave or decline questioning," which happened repeatedly in this case. *United States v. Sanchez*, 676 F.3d 627, 631 (8th Cir. 2012). Thompson's argument fails.

As to whether Thompson invoked his right to counsel, he clearly did not. To invoke the *Miranda* right to counsel, a suspect must make an *unambiguous request* for an attorney. In other words, the suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel," the officers are not required to stop the interrogation. *Id.* For example, the Eighth Circuit has held that a defendant's question, "Could I call my lawyer?," was not sufficiently clear and unambiguous to invoke his right to cease questioning. *Dormire v. Wilkinson*, 249 F.3d 801, 805 (8th Cir. 2001). Here, Mr. Thompson's remarks about counsel were even more ambiguous than that. Indeed, the most reasonable interpretation of his comments is that Thompson in fact had no intention to invoke his right to have counsel present at that moment, or to cut-

off questioning, but was simply asking the agent's advice on whether he should retain a lawyer if and when he was charged and brought to court. The discussion about an attorney supplies no basis to suppress any of the defendant's statements.

For these reasons, and those to be offered in post-hearing briefing, the motion should be denied. At the hearing, the Government will offer the recording of the interview inside the agent's vehicle, as well as some BWC clips that show the interactions leading up to that conversation. The Government will also call the questioning agent to offer brief testimony about the surrounding circumstances of the interview.

Dated: September 2, 2025

Respectfully Submitted,

JOSEPH H. THOMPSON
Acting United States Attorney

*/s/ Ruth S. Shnider*

BY: RUTH S. SHNIDER
Assistant U.S. Attorney